IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| TRANSAMERICA LIFE INSURANCE COMPANY, | ) ) ) Case No. 5:20-cv-00059 ) ) ) ) By:  Michael F. Urbanski ) Chief United States District Judge |
| v. | |
| BONNIE LOU KAUFMANN,  et al., | |
| Defendants. | |

## MEMORANDUM OPINION

This matter is before the court on defendants Bonnie Lou Kaufmann's, Stephen J. Kaufmann's, and Taking Care of People.org's (collectively the "Kaufmanns") motion to stay the proceedings pending the resolution of a related criminal case arising out of the same conduct underlying the claims in this case. ECF No. 7. Plaintiff Transamerica Life Insurance Company ("Transamerica") opposes the motion to stay, arguing the Kaufmanns have failed to satisfy their burden to warrant such an extreme remedy and that a stay of the civil case would be greatly prejudicial. ECF No. 11.  The court heard argument on November 12, 2020, and the matter is ripe for resolution.

I.

This case arises out of a long-term care insurance dispute in which the insurance provider, Transamerica, claims that the Kaufmanns fraudulently obtained benefits.

Transamerica is a provider of long-term care insurance, which reimburses claimants for costs of care required when claimants cannot perform Activities of Daily Living due to severe cognitive impairment. ECF No. 1, at 2. In this case, Transamerica claims Stephen

1

Kaufmann and Bonnie Kaufmann defrauded Transamerica out of $808,000 over a ten-year period in which they, using their allegedly sham non-profit corporation, Taking Care of People.org, submitted claims on behalf of Bonnie Kaufmann for a condition she did not have. Id. at 4. Transamerica claims that toward the end of the scheme, Stephen Kaufmann submitted fraudulent claims under a separate policy issued to him.

Bonnie and Stephen Kaufmann were married for some time and worked together at Stephen Kaufmann's law firm, where he specialized in elder law and estate-planning. Id. at 2. They purchased long-term care policies with Transamerica in the late 1990s. In 2010, Bonnie Kaufmann submitted a claim for benefits, representing that she could not conduct her Activities of Daily Living without hands-on assistance. Id. at 3. She simultaneously filed for bankruptcy. Her claims were approved by Transamerica, and Stephen Kaufmann became her sole caregiver. Stephen Kaufmann created Taking Care of People.org, served as its CEO and director, and allegedly provided care to his wife as its sole client. Over the course of the next several years, the Kaufmanns submitted hundreds of invoices in which they claimed Stephen Kaufmann personally provided 72 hours of care to Bonnie Kaufmann each week, amounting to $107,000 each year in benefits, all the while continuing to work full time as an attorney. Id. at 3-4.

Eventually, Stephen Kaufmann began submitting claims under his insurance policy. However, many of the invoices submitted on his behalf reflected that he paid for out-of-pocket care to assist him on the same dates for which he submitted invoices claiming he had provided hands-on care to his wife. A claims investigation by Transamerica revealed neither party was impaired in their ability to perform Activities of Daily Living. Id. at 4-5. A series of

videos posted by the Kaufmanns online show them engaging in construction projects and other activities contrary to their assertions that they could not independently bathe or use a toilet. Id. at 13-15.

On September 18, 2020, Transamerica filed their complaint in the Western District of Virginia. See generally id. On September 28, 2020, Bonnie and Stephen Kaufmann were arrested by the Luray Police Department on criminal fraud charges arising out of the same underlying conduct as the civil case. ECF Nos. 7-1, 7-2. On October 6, 2020, the Kaufmanns filed a motion to stay the civil proceedings until the criminal charges are resolved. ECF No. 7. At this point, an indictment against the Kaufmanns has not been obtained, but law enforcement has represented an indictment is imminent.

## II.

Courts have discretion in whether to grant a motion to stay. Landis v. North American Co., 299 U.S. 248, 254 (1936). Federal courts use the balancing test set in Landis to weigh the hardship to the moving party against the prejudice to the opposing party. See id. at 255 (holding that a party requesting a stay must show hardship if there is even a fair possibility that a stay would damage the opposing party); see also Williford v. Armstrong World Indus., Inc., 715 F.2d 124, 127 (4th Cir. 1983) ("Party seeking stay must justify it by clear and convincing circumstances outweighing potential harm to the party against whom it is operative."). Additional considerations include the interests of persons not party to the civil litigation, the public interest, the danger of discovery abuse, bad faith, and the status of the criminal proceedings, among other concerns. See Afro-Lecon, Inc. v. United States, 820 F.2d 1198, 1202-04 (Fed. Cir. 1987); In re Phillips, Beckwith & Hall, 896 F. Supp. 553, 558 (E.D.Va.

1995). A party seeking a stay must show by clear and convincing evidence that the party's hardship outweighs the prejudice to the opposing party. See <u>Williford</u>, 715 F.2d at 127.

While the burden is a high one, a court may stay civil proceedings when there is a risk of self-incrimination by a party. <u>In re Grand Jury Subpoenas Duces Tecum Special Grand Jury, Sept. 1986 Term</u>, 659 F. Supp. 628, 634 (D. Md. 1987) (citing <u>Shaffer v. United States</u>, 528 F.2d 920, 922 (4th Cir. 1975)). An adverse inference can be drawn against litigants who assert their Fifth Amendment rights in a civil proceeding. See <u>Baxter v. Palmigiano</u>, 425 U.S. 308, 318 (1976).

Transamerica argues that a stay until the criminal matter is resolved would substantially prejudice its interests because it would delay their recovery for an indeterminate period, risk the loss of relevant evidence over time, and deplete the Kaufmanns' resources in addressing the criminal matter. Further, Transamerica argues that the stay should not apply to the nonprofit since corporations do not have Fifth Amendment rights. At the hearing, Transamerica indicated that a new representative had been appointed as the spokesperson for the nonprofit because of the criminal investigation, so the civil matter could proceed against the organization without implicating the defendants. Conversely, the Kaufmanns argue that their interests are inextricably tied to the nonprofit and proceeding against the nonprofit alone would inevitably compromise their Fifth Amendment rights by forcing their involvement in the lawsuit. The Kaufmanns contend that, given speedy trial requirements, the criminal matter is likely to be resolved expeditiously and the availability of restitution under the relevant criminal charges mitigates any concern about delayed recovery or depleted resources.

Under different circumstances, the Eastern District of Virginia exercised its discretion to deny a stay of civil proceedings pending a criminal lawsuit, holding that while the defendants' Fifth Amendment rights were implicated, the prejudice to plaintiff outweighed the burden on defendants as staying a case for "the undeterminable time length of any criminal prosecution… makes it more likely that: (1) documents will be misplaced, (2) memories will fade and (3) Defendants will have fewer monetary resources available for Plaintiff to collect on any financial judgment." Avalonbay Communities, Inc. v. San Jose Water Conservation Corp., No. CIV A 07-306, 2007 WL 2481291, at *2 (E.D. Va. Aug. 27, 2007), aff'd, 325 F. App'x 217 (4th Cir. 2009). The court noted that Fifth Amendment implications extended to corporations as well, though corporations do not have Fifth Amendment rights, because "an individual speaking on behalf of a corporation can assert the Fifth Amendment privilege" and the representative "need not be indicted to claim the Fifth Amendment privilege." Id. However, unlike this case, an indictment was not pending. The court noted that courts favor a stay when a party is under indictment for a serious offense. Id. (citing SEC v. Dresser Indus. Inc., 628 F.2d 1368, 1376 (C.A.D.C. 1980) and Trustees of the Plumbers v. Transworld Mechanical, 886 F.Supp. 1134, 1139 (S.D.N.Y. 1995).

Although no indictment has yet been returned, the Kaufmanns' arrest and the government's assertion that an indictment is imminent puts their Fifth Amendment rights at risk. Indeed, the cases that deny a stay involve civil lawsuits in which defendants under investigation were concerned that their involvement in discovery would increase their risk of criminal prosecution down the road, not cases in which defendants have already been charged. Compare Avalonbay, 2007 WL 2481291, at *3 (finding that a stay was not warranted because

5

the court had no knowledge of whether the investigation would lead to an indictment) with Ashworth v. Albers Med., Inc., 229 F.R.D. 527, 531 (S.D.W. Va. 2005) (finding that a stay was warranted because government represented to defendants that an indictment was imminent). On balance, and to avoid an indefinite stay, the court finds it appropriate to delay civil proceedings for 120 days to protect the Kaufmanns' Fifth Amendment rights for the duration of time it takes the government to return an indictment in the related criminal matter. To address Transamerica's concern about the impact of time on the availability of critical evidence, the court will permit the parties to engage in document discovery from third parties but will neither permit discovery from the defendants nor the taking of any depositions. At the termination of the 120-day stay, the court will revisit the issue of a stay to account for developments in the criminal matter and consider the appropriateness of an extension.

## III.

For the forgoing reasons, the court **GRANTS in part** the Kaufmanns' motion to stay the proceedings for 120 days, at which point the court will consider the need for a potential extension of the stay. The Kaufmanns' time to file responsive pleadings is extended to twenty-one (21) days after the end of the stay. During the 120 days, the parties will be permitted to conduct document discovery from third parties, but they will not be permitted to take any depositions or request discovery from the defendants. The parties are **DIRECTED** to coordinate with the clerk of the court to set a trial date in 2021.

An appropriate Order will be entered.

Entered:   December 2, 2020

Michael F. Urbanski
Chief U.S. District Judge
2020.12.02 18:23:36 -05'00'

Michael F. Urbanski
Chief United States District Judge

7