IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| TRANSAMERICA LIFE INSURANCE COMPANY, | ) <br> ) <br> ) Case No. 5:20-cv-059 |
| Plaintiff, | ) |
| v. | ) By: Michael F. Urbanski <br> ) Chief United States District Judge <br> ) |
| BONNIE LOU KAUFMANN, STEPHEN J. KAUFMANN, AND TAKING CARE OF PEOPLE.ORG, | ) <br> ) <br> ) <br> ) |
| Defendants. | ) |

## MEMORANDUM OPINION

This matter comes before the court on plaintiff Transamerica Life Insurance Company's ("Transamerica") Motion for Default Judgment. ECF No. 83. For the foregoing reasons, Transamerica's Motion for Default Judgment is **GRANTED** as to Taking Care of People.org ("TCOP") on Claims One and Four and **DENIED** without prejudice as to Bonnie L. Kaufmann ("Bonnie"), Stephen J. Kaufmann (Stephen"), and the remainder of the claims against TCOP. A hearing will be set to determine the amount of damages to be entered pursuant to Federal Rule of Civil Procedure 55.

### I. Background

Transamerica initiated this suit in September 2020, alleging that Bonnie, Stephen, and their organization TCOP defrauded Transamerica out of hundreds of thousands of dollars in long-term care benefits paid under two long-term insurance plans, one benefitting each individual defendant. ECF No. 1, at ¶¶ 1–2.

1

In 2010, Bonnie submitted a claim for long-term care insurance benefits under her policy with Transamerica, claiming "a variety of subjective ailments" that "caused her to require 'Substantial Human Assistance' with her 'Activities of Daily Living'" (ADLs). Id. at ¶ 7. Transamerica approved Bonnie's benefit claim and Stephen became her sole caregiver. Id. at ¶¶ 10–11. Stephen created a non-profit organization, TCOP, in which he served as CEO and Director. Id. at ¶ 11. For much of this alleged scheme, Bonnie was the organization's only client. Id. The defendants submitted invoices representing that Stephen personally provided seventy hours of assistance to Bonnie per week. At a rate of $293.00 per day, Transamerica paid cash benefits to Bonnie of approximately $107,000.00 per year, totaling to approximately $808,613.95. Id. at ¶¶ 12–13. However, Transamerica alleges that during this time, Bonnie "has ... demonstrated physical abilities entirely inconsistent with her representations to Transamerica that she requires Substantial Human Assistance with her ADLs because, in fact she does not require such assistance;" defendants "knowingly and improperly billed Transamerica for care that [Stephen] did not provide and [Bonnie] did not receive or pay for;" and Stephen "has remained actively licensed and employed as an attorney during all periods relevant to [Bonnie]'s claim and routinely works at his office, alone, during times he represented to Transamerica that he was caring for [Bonnie]." Id. at ¶ 14.

In 2020, Transamerica claims that defendants began submitting fraudulent claims under Stephen's long-term care policy, representing that Stephen required and received assistance with his ADLs from a caregiver employed by Taking Care of People.org "on the same dates and times that he billed Transamerica for having purportedly provided such care to [Bonnie]." Id. at ¶ 17.

2

While the defendants were originally represented by counsel, their counsel was permitted to withdraw on April 19, 2022, after a conflict of interest arose. ECF No. 54. Despite Magistrate Judge Hoppe's instruction to find new counsel within thirty days, defendants did not do so and TCOP, a corporation, remains pro se. Id.

On July 15, 2022, Judge Hoppe found that TCOP had failed to defend against the action and directed the Clerk to enter default under Rule 55(a) of the Federal Rules of Civil Procedure. ECF No. 67, at 3; see also ECF No. 68.

## II. Jurisdiction and Venue

The court has both subject-matter jurisdiction over Transamerica's claims and personal jurisdiction over the defendants. The court exercises diversity jurisdiction in this matter, pursuant to 28 U.S.C. § 1332(a), because parties are respectively citizens of diverse jurisdictions, and the amount in controversy is in excess of $75,000.00. Transamerica is both incorporated in and has its principal place of business in Iowa, and is therefore a citizen of Iowa. Compl., ECF No. 1, at ¶ 19. Bonnie and Stephen are both Virginia citizens. Id. at ¶¶ 20–21. TCOP is a Virginia citizen because it is organized under Virginia law. Id. at ¶ 22. Venue is properly laid, pursuant to 28 U.S.C. § 1391(b)(2), because the acts and omissions underlying the Complaint took place in the Western District of Virginia.

## III. Legal Standard

Federal Rule of Civil Procedure 55 "authorizes the entry of a default judgment when a defendant fails 'to plead or otherwise defend' in accordance with the Rules." United States v. Moradi, 673 F.2d 725, 727 (4th Cir. 1982). The Federal Rules create a two-step process for entry of default judgment. First, the non-defaulting party must move for entry of default under

3

Rule 55(a). See Fed. R. Civ. P. 55(a). "The Clerk of the Court's interlocutory entry of default pursuant to Federal Rule of Civil Procedure 55(a) provides notice to the defaulting party prior to the entry of default judgment by the court." Hummel v. Hall, 868 F. Supp. 2d 543, 547 (W.D. Va. 2012) (citing Carbon Fuel Co. v. USX Corp., 1998 WL 480809, at *2 (4th Cir. Aug. 6, 1998)). Once default has been entered, the non-defaulting party may then move for entry of default judgment under Rule 55(b). Id. "If the plaintiff's claim is for a sum certain or a sum that can be made certain by computation, the clerk—on the plaintiff's request, with an affidavit showing the amount due—must enter judgment for that amount and costs against a defendant who has been defaulted for not appearing . . . ." Fed. R. Civ. P. 55(b)(1). However, "[i]n circumstances where the sum is not certain or where there is evidence to suggest that the defendant was incompetent or an infant, Rule 55(b)(2) applies, requiring that default can only be [made] by a court." Agri-Supply Co., Inc. v. Agrisupply.Com, 457 F. Supp. 2d 660, 662 (E.D. Va. 2006).

"Upon the entry of default, the defaulted party is deemed to have admitted all well-pleaded allegations of fact contained in the complaint," J & J Sports Prods., Inc. v. Romenski, 845 F. Supp. 2d 703, 706 (W.D.N.C. 2012), but not any such "allegations as to damages." S.E.C. v. Lawbaugh, 359 F. Supp. 2d 418, 422 (D. Md. 2005); Fed. R. Civ. P. 8(b)(6). Therefore, "to determine whether to enter judgment on a defendant's default, the court examines whether the well-pleaded allegations in the complaint support the relief sought in the case." Old Dominion Freight Line, Inc. v. Slabway, LLC, No. 1:22CV164, 2023 WL 2503310, at *1 (M.D.N.C. Mar. 13, 2023) (citing Ryan v. Homecomings Fin. Network, 253 F.3d 778, 780 (4th Cir. 2001). The pleadings must contain a "sufficient basis" for the judgment entered.

4

Nishimatsu Const. Co. v. Houston Nat. Bank, 515 F.2d 1200, 1206 (5th Cir. 1975). If there is a sufficient basis for the judgment, then the court "must make an independent determination regarding damages," Lawbaugh, 359 F. Supp. 2d at 422, "relying on affidavits or documentary evidence in the record," Old Dominion Freight Line, Inc. v. Slabway, LLC, No. 1:22CV164, 2023 WL 2503310, at *1 (M.D.N.C. Mar. 13, 2023).

Corporations, unlike natural persons, may not proceed pro se in federal court. See Rowland v. Cal. Men's Colony, Unit II Men's Advisory Council, 506 U.S. 194, 201–02 (1993) (noting long-held precedent that corporations must appear "only through licensed counsel"). Therefore, "a court may, after warning the corporate defendant of the consequences of not obtaining counsel and permitting the corporate defendant reasonable time to obtain counsel, enter a default and a default judgment against the unrepresented corporation." KCA Penland Holdings Corp. v. Great Lakes Directional Drilling, Inc., 5:14-CV-175-RLV-DCK, 2017 WL 812479, at *2 (W.D.N.C. March 1, 2017).

## IV. Liability

The court has examined Transamerica's well-pleaded allegations in the Complaint and determined that there is sufficient basis to support default judgment as to TCOP on Claims One and Four, but not as to the remaining claims against TCOP, Bonnie, or Stephen.

### A. Entry of Default Judgment

Transamerica is entitled to default judgment against TCOP, because the 501(c)(3) organization has failed to obtain new counsel and defend itself in this case. See Rowland, 506 U.S. at 201–02. Judge Hoppe warned TCOP of this outcome and specifically ordered them to

5

find counsel within a month of April 19, 2022. ECF No. 54. Despite the passage of over a year, TCOP has failed to comply with this court order.

Transamerica argues that default judgment should also be entered against Bonnie and Stephen under a veil piercing theory of liability. Pl.'s Mem. Supp. Default J., ECF No. 84, 15–17. "A corporation exists as a legal entity separate and distinct from its corporate shareholders." Cancun Adventure Tours, Inc. v. Underwater Designer Co., 862 F.2d 1044, 1047 (4th Cir. 1988). Usually, then, "each shareholder's responsibility for the acts of a corporation is limited to the shareholder's investment in that corporation." Id. Under most circumstances, a corporation's shareholders may be held liable for the corporation's debts only through veil piercing. See C.F. Trust, Inc. v. First Flight L.P., 266 Va. 3, 9–10, 580 S.E.2d 806, 809 (2003). "Traditional veil piercing permits a court to render an individual liable in a judgment against a business entity in which the individual has an interest, when the entity 'is in fact a mere instrumentality or alter ego of [the individual].'" Sky Cable, LLC v. DIRECTV, Inc., 886 F.3d 375, 385 (4th Cir. 2018) (alteration in original) (quoting NetJets Aviation, Inc. v. LHC Commc'ns, LLC, 537 F.3d 168, 176 (2d Cir. 2008)). But a court's decision to pierce the corporate veil "is an extraordinary act to be taken only when necessary to promote justice." C.F. Trust, Inc., 266 Va. at 10, 580 S.E.2d at 809.

> Under Virginia law, this alter ego theory must be supported by a showing that: (1) the individual and the corporation were united by interest and ownership; and (2) the individual "used the corporation to evade a personal obligation, to perpetrate fraud or a crime, to commit an injustice, or to gain an unfair advantage." Newport News Holdings Corp. v. Virtual City Vision, Inc., 650 F.3d 423, 434 (4th Cir. 2011) (quoting C.F. Trust, Inc. v. First Flight Ltd. P'ship, 306 F.3d 126, 132 (4th Cir. 2002) (internal quotations omitted)). See also O'Hazza v. Exec. Credit Corp., 246 Va. 111, 115, 431 S.E.2d 318 (1993) (piercing corporate veil

6

is justified when: (1) "the unity of interest and ownership is such that the separate personalities of the corporation and the individual no longer exist and to adhere to that separateness would work an injustice[;]" and (2) "one who seeks to disregard the corporate entity [shows that the individual] sought to be held personally liable has controlled or used the corporation to evade a personal obligation, to perpetrate fraud or a crime, to commit an injustice, or to gain an unfair advantage[ ]") (citing Lewis Trucking Corp. v. Commonwealth, 207 Va. 23, 31–32, 147 S.E.2d 747 (1966)).

S.E.C. v. Woolf, 835 F. Supp. 2d 111, 123–24 (E.D. Va. 2011).

Transamerica argues that piercing the corporate veil is appropriate in this case because, when Stephen formed TCOP, he became its "CEO and director," while Bonnie "became its only client." Compl., ECF No. 1, at ¶ 11. Transamerica notes that Stephen was the sole director of TCOP in 2021, and that both Stephen and Bonnie invoked their Fifth Amendment right to silence when asked for documents about TCOP. ECF No. 84, at 18. Because Transamerica has not provided sufficient evidentiary support for their theory of veil-piercing, the court **DENIES** the motion for default judgment as to Bonnie and Stephen without prejudice at this time.

## B. Liability on Specific Counts

Transamerica seeks entry of default judgment against TCOP on (1) Claims One and Two, alleging fraud; (2) Claim Three, alleging constructive fraud; (3) Claim Four, alleging civil conspiracy; (4) Claim Five, alleging negligence; (5) Claim Eight, alleging conversion; and (6) Claim Nine, seeking restitution and disgorgement. As described below, Transamerica has plead facts sufficient to establish Claims One and Four.

### 1. Fraud (Claims One & Two)

In Claims One and Two, Transamerica alleges that TCOP engaged in common law fraud as to Bonnie's claim for benefits in Claim One and Stephen's claim for benefits in Claim Two. Transamerica has pled facts sufficient to establish TCOP's liability on Claim One, but not Claim Two.

In Virginia, "[a] party alleging fraud must prove by clear and convincing evidence (1) a false representation, (2) of material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) reliance by the party misled, and (6) resulting damage to him." Van Deusen v. Snead, 247 Va. 324, 327, 441 S.E.2d 207, 209 (1994) (quoting Thompson v. Bacon, 245 Va. 107, 111, 425 S.E.2d 512, 514 (1993)). When a plaintiff alleges fraud, they "must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b); see also Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 784 (4th Cir. 1999) (citations omitted) ("[T]he circumstances required to be pled with particularity under Rule 9(b) are the time, place, and contents of the false representations, as well as the identity of the person making the representation and what he obtained thereby."). Furthermore, "[t]he generally accepted doctrine at common law is that the liability of the partners in tort would be joint and several and not joint." Weaver v. Marcus, 165 F.2d 862, 865 (4th Cir. 1948).

Per the Complaint, TCOP was the vehicle through which the Kaufmann's perpetuated their fraudulent scheme. When Bonnie first submitted her claim for benefits, she sought homecare provided by Stephen via TCOP as "an eligible provider of Home Care or Home Health Care Services," even though it was not. Compl., ECF No. 1, at ¶ 31. Further, TCOP "supervised the alleged care services of Stephen and certified the accuracy of the invoices

8

when it did not" and received compensation for the alleged services provided to Bonnie. Id. at ¶ 111. TCOP "signed and provided" a certification on "each of hundreds of weekly billing statements submitted to Transamerica," id. at ¶ 57, attesting that the hours submitted in each invoice "are accurate, were worked by [Stephen, as a caregiver with TCOP] during the week and times indicated as stated; the Provider rate as stated, and all hours and services were properly certified by the patient," ECF No. 1-4, at 2. The Kaufmanns then invoiced Transamerica for services Bonnie did not need and for services neither Stephen nor TCOP provided. Compl., ECF No. 1, at ¶¶ 80–88. Transamerica repeatedly relied on TCOP's invoices and certifications, paying Bonnie a total of $808,613.95 based on "representations that [Bonnie] actually required Substantial Human Assistance with her ADLs, and was receiving and paying for care provided by [Stephen] through his purported non-profit, [TCOP]." Id. at ¶ 13.

Relatedly, TCOP also supervised the care services under Stephen's policy, made false certifications as to the care received, and "submitted a series of false invoices to Transamerica for caregiving services not provided to [Stephen]." Id. at ¶¶ 109, 120. The Complaint provides an example from July 2018 where "[TCOP] inappropriately billed Transamerica for Stephen's caregiving services for three days" when the Kaufmanns were hospitalized following a fire that destroyed their home. Id. at ¶ 84. Transamerica quickly began investigating Stephen's claims, ultimately denying claims under Stephen's policy without paying out any benefits. Id. at ¶¶ 94–108.

Transamerica has more than satisfied the requirements of Rule 9(b) particularity pleading for Claim One, which pertains to Bonnie's claims for benefits. The Complaint states

9

that TCOP intentionally and knowingly made repeated false statements of material fact, embodied by the weekly false certifications and invoices submitted for Bonnie's purported care. These false statements were made with the intent to mislead and were in fact relied upon by Transamerica in paying out insurance benefits, leading to economic damage. Therefore, default judgment is **GRANTED** on Claim One as to TCOP.

However, Transamerica has failed to state a claim for fraud under Stephen's policy in Claim Two. Transamerica denied the allegedly fraudulent invoices from TCOP as to Stephen's care and therefore did not rely on TCOP's misrepresentations or suffer resulting economic damage. Therefore, default judgment is **DENIED** on Claim Two as to TCOP.

### 2. Constructive Fraud (Claim Three)

The plaintiffs also plead facts sufficient to establish Claim Three, though no additional award will be granted on this count as it is duplicative of Claim One. In Claim Three, Transamerica alleges constructive fraud by TCOP. Compl., ECF No. 1, at ¶¶ 25–26.

In Virginia, "the elements of a cause of action for constructive fraud are a showing by clear and convincing evidence that a false representation of a material fact was made innocently or negligently, and the injured party was damaged as a result of his reliance upon the misrepresentation." Mortarino v. Consultant Eng'g Servs., Inc., 251 Va. 289, 295, 467 S.E.2d 778, 782 (1996). "Constructive fraud differs from actual fraud in that the misrepresentation of material fact is not made with the intent to mislead but is made innocently or negligently although resulting in damage to the one relying on it." Cohn v. Knowledge Connections, Inc., 266 Va. 362, 369, 585 S.E.2d 578, 582 (2003) (emphasis in original) (quoting Evaluation Rsch.

Corp. v. Alequin, 247 Va. 143, 148, 439 S.E.2d 387, 390 (1994)). As above, at common law tortfeasors are jointly and severally liable for their conduct. Weaver, 165 F.2d at 865.

This Claim is pleaded in the alternative to Claims One and Two, which allege fraud under Bonnie and Stephen's policies with Transamerica, respectively. This claim for constructive fraud is unavailable for actions related to Stephen's policy, as Transamerica did not rely on the alleged misrepresentations. For wrongful conduct in relation to Bonnie's policy, "a contemporaneous finding of liability on [this] alternative claim[] would amount to awarding Plaintiff a double recovery" for the liability already imposed under Claim One regarding Bonnie's policy. CMA CGM S.A. v. Dubitec Am., Inc., No. 2:14CV608, 2015 WL 5837571, at *4 (E.D. Va. Oct. 2, 2015). Default judgment is therefore **DENIED** on Claim Three.

### 3. Civil Conspiracy (Claim Four)

The facts alleged by Transamerica, taken as true, are sufficient to state a claim for statutory civil conspiracy. Virginia law provides that "[a]ny person who [is] injured in his reputation, trade, business or profession by reason of a violation of § 18.2-499"—Virginia's civil conspiracy statute—may file suit to recover treble damages, costs, and attorney fees. Va. Code Ann. § 18.2-500. Virginia Code § 18.2-499 imposes liability, in relevant part, on "[a]ny two or more persons who combine, associate, agree, mutually undertake or concert together for the purpose of (i) willfully and maliciously injuring another in his reputation, trade, business or profession by any means whatever[.]" "To ultimately prevail under the Virginia conspiracy statute, a plaintiff must prove by clear and convincing evidence the following elements: (1) concerted action; (2) legal malice; and (3) causally related injury." Schlegel v. Bank of Am., N.A., 505 F. Supp. 2d 321, 325 (W.D. Va. 2007). Furthermore, under Virginia law,

"conspirators are jointly and severally liable for all damage resulting from the conspiracy." Worrie v. Boze, 198 Va. 533, 540, 95 S.E.2d 192, 198 (1956), abrogated on other grounds by Station # 2, LLC v. Lynch, 280 Va. 166, 695 S.E.2d 537 (2010); see also Tire Eng'g & Distribution, LLC v. Shandong Linglong Rubber Co., 682 F.3d 292, 312 n.10 (4th Cir. 2012).

Transamerica claims that Bonnie, Stephen, and TCOP worked together to improperly obtain insurance benefits from Transamerica. Bonnie claimed she was eligible for benefits and Stephen claimed he provided her care through his role with TCOP. Likewise, when the scheme expanded to encompass Stephen's plan, Stephen falsely claimed he was eligible for benefits that were received and paid for by an agent of TCOP. Under both Bonnie's and Stephen's plans, TCOP knowingly transmitted fraudulent billing statements to Transamerica to make the Kaufmanns' claims appear to be legitimate when, in fact, they were not. TCOP failed to notify Transamerica of the claim fraud being perpetrated under the Kaufmanns' Policies. As a result of this scheme, Transamerica paid out benefits that were unwarranted under Bonnie's policy and incurred costs related to its investigation of these claims under both policies. Compl., ECF No. 1, at ¶ 141–45. These actions are more than enough to establish the elements of a statutory civil conspiracy claim: Bonnie, Stephen, and TCOP mutually undertook to improperly gain insurance benefits, they acted intentionally and purposefully in their efforts to do so, and their actions caused economic injury to Transamerica in the form of benefits paid and investigation costs. Schlegel, 505 F. Supp. 2d at 325–26.

The intracorporate immunity doctrine does not bar recovery under this Claim. This doctrine holds that "a single entity cannot conspire with itself." Fox v. Deese, 234 Va. 412, 428, 362 S.E.2d 699, 708 (1987); ePlus Tech., Inc. v. Aboud, 313 F.3d 166, 179 (4th Cir. 2002)

("[U]nder the intracorporate immunity doctrine, acts of corporate agents are acts of the corporation itself, and corporate employees cannot conspire with each other or with the corporation."). The relationship between Bonnie, Stephen, and TCOP is difficult to untangle, as both Bonnie and Stephen appear to have been principals or agents of TCOP at various points in time. Compl., ECF No. 1, at ¶ 148; ECF No. 1-4, at 2; Mem. In Supp. Default, ECF No. 84, at 19. However, if an individual acts outside their scope of employment or agency, then the intracorporate immunity doctrine does not apply. See Darton Env't, Inc. v. FJUVO Collections, LLC, 332 F. Supp. 3d 1022, 1035 (W.D. Va. 2018); Vollette v. Watson, 937 F.Supp.2d 706, 727 (E.D. Va. 2013) ("[T]he 'intracorporate immunity doctrine,' which has been adopted by the Virginia Supreme Court and the Fourth Circuit, deems multiple defendants a single entity for the purpose of analyzing a civil conspiracy claim if such defendants are employees or agents of the same entity and are acting within the scope of their employment/agency.") (emphasis in the original).

TCOP was set up to provide caregiving services to a client. When purportedly receiving care as a TCOP client, neither Bonnie nor Stephen was acting within the scope of their role with TCOP. Therefore, there were always at least two entities participating in each scheme: Bonnie and TCOP (with Stephen as TCOP's agent) for the conspiracy to obtain benefits under Bonnie's policy, and Stephen and TCOP for the conspiracy to obtain benefits under Stephen's policy. Since the actors did not all fall under the same corporate umbrella, the corporate immunity doctrine is inapplicable.

Default judgment is **GRANTED** on Claim Four as to TCOP.

### 4. Negligence (Claim Five)

Transamerica's theory of negligence against TCOP fails. First, Transamerica alleges TCOP "engaged in negligence by failing to train and supervise Stephen, its director and CEO, and other purported employees of [TCOP]" to provide the care specified under the arrangement with TCOP. Compl., ECF No. 1 at ¶ 148. Virginia does not recognize duties of negligent supervision or training. See Chesapeake & Potomac Tel. Co. of Virginia v. Dowdy, 235 Va. 55, 61, 365 S.E.2d 751, 754 (1988) (recognizing "there is no duty of reasonable care imposed upon an employer in the supervision of its employees"); see also Warner v. Centra Health Inc., 503 F. Supp. 3d 479, 500 (W.D. Va. 2020) (collecting Virginia Circuit Court cases declining to recognize negligent supervision or training). The court declines to create such a duty here. See Cook v. John Hancock Life Ins. Co. (U.S.A), No. 7:12-CV-00455, 2015 WL 178108, at *13 (W.D. Va. Jan. 14, 2015).

Second, Transamerica alleges TCOP was negligent "by failing to provide accurate information to Transamerica in support of the benefit claims submitted by the Kaufmanns." Compl., ECF No. 1, at ¶ 148. This is essentially a claim for negligent misrepresentation. "Virginia courts . . . do not recognize negligent misrepresentation as a separate cause of action from that of constructive fraud." Baker v. Elam, 883 F. Supp. 2d 576, 581 (E.D. Va. 2012) (citing Baker v. Marcus, 201 Va. 905, 909, 114 S.E.2d 617 (Va. 1960)). As Claim Three is for constructive fraud, plaintiffs cannot also make this claim for negligent misrepresentation. Therefore, default judgment is **DENIED** as to Claim Five.

### 5. Conversion (Claim Eight)

"Conversion is [1] the wrongful assumption or exercise of the right of ownership over goods or chattels [2] belonging to another [3] in denial of or inconsistent with the owner's

14

rights." Economopoulos v. Kolaitis, 259 Va. 806, 814, 528 S.E.2d 714, 720 (2000); see also Universal C.I.T. Credit Corp. v. Kaplan, 198 Va. 67, 75, 92 S.E.2d 359, 365 (1956). When the property allegedly converted is money, it can only be recovered in a conversion action "[s]o long as [it] is kept separate and identifiable[.]" Fed. Ins. Co. v. Smith, 63 F. App'x 630, 638 (4th Cir. 2003) (applying Virginia law in holding that the "funds formerly represented by the checks" were no longer segregated after they were deposited into a bank account, and therefore "were no longer susceptible to an action for conversion"); see also Lewis v. Fowler, 479 So.2d 725, 726 (Ala. 1985) (requiring that money be segregated in order to be recoverable in an action for conversion).

Transamerica establishes the first three elements by claiming that TCOP "receive[d] and retain[ed] possession" of the insurance benefits paid under Bonnie's policy, to which they had no lawful right, thereby "knowingly and intentionally depriv[ing] Transamerica of insurance benefits paid under [Bonnie]'s policy that should not and would not have been paid but for [TCOP]'s fraud and deceit." Compl., ECF No. 1, at ¶ 170–72. However, Transamerica paid these benefits to Bonnie in cash. Id. at ¶ 13. Transamerica has pled no facts related to whether these funds were separately maintained, and therefore the court cannot impose liability on this basis. Therefore, default judgment is **DENIED** on Claim Eight as to TCOP.

### 6. Restitution and Disgorgement (Claim Nine)

Restitution aims "to restore the status quo and return the parties to the positions they occupied before the transactions at issue occurred." Commodity Futures Trading Comm'n v. Tate St. Trading, Inc., No. 3:19-CV-00690-JAG, 2021 WL 5105031, at *11 (E.D. Va. June 1, 2021). "Disgorgement wrests ill-gotten gains from the hands of a wrongdoer . . . [and] does